767 So.2d 149 (2000)
Patricia BEASLEY, et al., Plaintiffs-Appellants,
v.
YOKEM TOYOTA, et al., Defendants-Appellees.
No. 33,805-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
*152 Weems, Schimpf, Hayter, Gilsoul & Carmouche by Carey T. Schimpf, Shreveport & Amy Lawhon, Counsel for Appellants.
Bodemheimer, Jones & Szwak by Mary E. Winchell & David Szwak, Shreveport, Counsel for Defendant-Appellee Yokem Toyota and Motors Insurance Company
Before WILLIAMS, GASKINS and CARAWAY, JJ.
GASKINS, Judge.
The plaintiffs appeal from a jury verdict, contending that the awards for damages were inadequate. For the following reasons, we affirm in part and amend in part the jury verdict.

FACTS
On August 28, 1996, Patricia Beasley and her husband, Calvin Beasley, went for a test drive of a Toyota Avalon, in anticipation of purchasing the automobile. Steven James Jernigan, a salesman for Yokem Toyota was driving the car. Mr. Beasley was in the front passenger seat and Mrs. Beasley rode in the back seat. The vehicle *153 proceeded south on Youree Drive. A vehicle driven by Toni Lynn Green was also traveling south in the in the adjoining lane. Near the intersection of Youree and Leonard Road, Mr. Jernigan veered into Ms. Green's lane, cutting in front of her vehicle. Mr. Jernigan then immediately slowed down to make a turn onto Leonard Road. This maneuver caused Ms. Green to slam into the rear of the Yokem vehicle. Mrs. Beasley injured her head, back and neck. She later complained of arm and shoulder pain and frequent severe headaches. Mr. Beasley suffered a cut to his middle right finger and complained of back, neck and head pain. They were taken to Highland Hospital and were treated and released. Mrs. Beasley had an allergic reaction to medication administered at the hospital.
Mr. Beasley recovered from his injuries in a timely fashion. Mrs. Beasley did not. She was employed as a school teacher in Bossier Parish, teaching gifted children. During the course of these proceedings, her duties were altered, requiring her to travel to different schools in the parish. She claimed that she continued to have severe headaches and had pain in her neck, shoulder, and right arm. She contended that the headaches were often so intense that she vomited. According to Mrs. Beasley, her condition made it difficult to drive to the various schools.
Mrs. Beasley was treated by an orthopedic surgeon, Dr. Baer Rambach, who prescribed physical therapy and pain medication. Mrs. Beasley began therapy, but failed to finish the course of treatment. She was referred to a different physical therapist, but again failed to complete the treatment. Mrs. Beasley later sought treatment with a chiropractor.
Mrs. Beasley also saw two neurologists regarding her headaches. They both recommended the administration of a drug intravenously to alleviate her headaches. This treatment had been shown to be highly successful in treatment of the type of headaches suffered by the plaintiff. Mrs. Beasley did her own research and determined that one possible side effect of the treatment was stroke. She concluded that this was not an acceptable risk and declined treatment.
Mrs. Beasley taught the year after the accident, but found that the rigors of her school teaching position aggravated her condition and took a one year sabbatical. During that time, Mrs. Beasley was referred to Dr. Paul Ware, a psychiatrist and neurologist, for treatment of her headaches as well as the emotional aspects of her injuries. She began frequent counseling sessions and was given anti-anxiety and anti-depressant drugs in addition to medication for her headaches. Dr. Ware opined that the plaintiff needed to be off work for another two years to further the therapy and then would require medication for the remainder of her life.
Mr. Beasley and Mrs. Beasley, individually and on behalf of her three children, filed suit on January 14, 1997 against Yokem Toyota; its insurer, M.I.C. Property and Casualty Insurance Company; Steven James Jernigan; Toni Lynn Green; her insurer, Mutual Service Casualty Insurance Company; and State Farm Automobile Insurance Company, the Beasley's uninsured/underinsured insurance carrier. The Beasleys sought to recover for their personal injuries, medical expenses, and past and future lost wages. They also asserted loss of consortium claims on behalf of Mr. Beasley and Mrs. Beasley's children, Justin McLawchlin, Blake McLawchlin and Ashley McLawchlin.
This case was consolidated with a suit filed by Ms. Green against Yokem Toyota. That suit was settled. The Beasleys eventually dismissed their claims against Ms. Green and her insurer.
The parties then entered into a joint stipulation specifying that the accident was caused solely by Yokem's salesman, Mr. Jernigan, that he was acting in connection with his employment at Yokem Toyota, and that M.I.C. is the liability insurer for *154 Yokem and Mr. Jernigan. The parties specified that the Beasleys and Ms. Green were not at fault in causing the accident. Therefore, the only issue remaining for trial was that of damages.
Prior to trial, the parties entered into another stipulation, specifying that the medical records from Highland Hospital and Bossier Medical Center would be admitted into evidence. The parties further stipulated that Mrs. Beasley had incurred $12,950.45 in medical charges, but that the amounts listed were to be updated at trial. The defendants retained the right to contest the necessity and causation of the items listed.
At trial, Mrs. Beasley contended that she suffered damages for past and future medical expenses. She presented evidence to establish the cost of her future treatment which would be required for the remainder of her life.
Mrs. Beasley also claimed past and future lost wages. She sought reimbursement for the one year sabbatical she asserted was necessitated by this accident which precluded her from using the time for its intended purpose, furthering her education. She also sought recovery for being off work during two more years of therapy with Dr. Ware. In addition, Mrs. Beasley and her husband claimed general damages.
Mr. Beasley and the McLawchlin children claimed damages for loss of consortium, arguing that Mrs. Beasley's condition makes her tense and that she cannot fulfill her household duties as she did prior to the accident.
The defendants contended that Mrs. Beasley failed to mitigate her damages by refusing to complete physical therapy and refusing to undergo treatment for her headaches, as suggested by two neurologists. The defendants introduced surveillance tapes showing Mrs. Beasley performing physical labor such as laying plastic pipe in her mother's yard and lifting grocery bags. She was also observed sitting in a movie for three hours, even though she claimed that similar activity exacerbated her headaches.
The case was heard on July 12-16, 1999. The jury returned a verdict awarding the following amounts:

Patricia Beasley
 Past medical expenses $ 9,000.00
 Future medical expenses $ 5,000.00
 Past Pain, Suffering, Mental Anguish
 and Loss of Quality and Enjoyment
 of Life $10,000.00
 Future Pain, Suffering, Mental Anguish
 and Loss of Quality and Enjoyment
 of Life 0
 Past Lost Wages $10,000.00
 Future Lost Wages $12,000.00
 __________
 Total $46,000.00
Calvin Beasley
 Past Medical Expenses $ 500.00
 Past Pain, Suffering, Mental Anguish
 and Loss of Quality and Enjoyment
 of Life 0
 Loss of Consortium 0
 ___________
 Total $ 500.00
Justin McLawchlin
 Loss of Consortium $ 500.00
Blake McLawchlin
 Loss of Consortium $ 500.00
Ashley McLawchlin
 Loss of Consortium $ 1,000.00

A judgment incorporating the jury verdict was filed on July 27, 1999. The plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV), or alternatively for new trial, contending that the amounts awarded by the jury were too low and were contrary to the evidence and stipulations presented at trial. The motion was granted only to the extent of making a general damage award to Calvin Beasley of $1,500.00. The remaining issues raised by the motion for JNOV were denied. The plaintiffs appeal the jury verdict and those aspects of the trial court judgment denying the motion for JNOV.

STANDARD OF REVIEW
A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the *155 appellate court may feel that its own evaluations and inferences are as reasonable as those of the lower court. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings. Only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in that which is said. Rosell v. ESCO, 549 So.2d 840 (La.1989); Evans v. Lites, 30,362 (La. App.2d Cir.6/24/98), 714 So.2d 914.
A trial court may evaluate expert testimony by the same principles that apply to other witnesses and has great discretion to accept or reject medical or lay opinion. The weight to be accorded to testimony of experts depends largely on their qualifications and the facts on which they base their opinions. Evans v. Lites, supra.
A judgment notwithstanding the verdict (JNOV) is the procedural device authorized by La. C.C.P. art. 1811 whereby the trial court may correct a legally erroneous verdict by modifying fault or damages, or both, that the jury may have assessed. JNOV is a question of whether the jury verdict, as matter of law, is supported by any legitimate or substantial evidence. To determine that the evidence was insufficient as a matter of law requires a finding that no valid line of reasoning and permissible inferences could possibly lead rational persons to the conclusions reached by the jury. Kose v. Cablevision of Shreveport, 32,855 (La.App.2d Cir.4/5/00), 755 So.2d 1039, writs denied, XXXX-XXXX, XXXX-XXXX (La.6/16/2000), 764 So.2d 964, 765 So.2d 340. In applying this standard, the trial court may not substitute its judgment of the facts for that of the jury and must consider all evidence in the light most advantageous to the party in whose favor the jury verdict was rendered, giving this party the benefit of every legitimate and reasonable inference that could have been drawn from the evidence. The trial court does not have the discretion to weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury. All reasonable inferences or factual questions should be resolved in favor of the nonmoving party. Kose v. Cablevision of Shreveport, supra.

PAST LOSS OF WAGES
The plaintiffs contend that the jury award of $10,000.00 for past lost wages is inadequate. Mrs. Beasley had been teaching a sufficient number of years to be entitled to a sabbatical. Following the accident, she continued to experience headaches, shoulder and arm pain and was becoming depressed. Her treating physicians determined that it would be advantageous for her to take a one-year sabbatical to recover from the accident. Mrs. Beasley argues that during her sabbatical year, she received $21,702.00 in sabbatical pay from the school board, which is $9,190.00 less than the $30,892.00 in salary she would have earned had she worked. She claims that the jury erred in failing to award her the full value of the sabbatical year.
According to Mrs. Beasley, the loss of fringe benefits are recoverable as lost wages. She contends that the sabbatical is a fringe benefit provided for the furtherance of a teacher's education in order to remain current with classroom skills. She asserts that she was forced to use her sabbatical to recuperate from her injuries and that, but for the accident, she would still have her sabbatical. Therefore, she claims that the jury erred in failing to include the loss of sabbatical in the calculation of lost past wages.
According to the defendants, the sabbatical is to be used for either professional or educational pursuits or for rest and recuperation. The defendants contend that it is not clear why the jury awarded Mrs. Beasley $10,000.00 for past lost wages instead of the $9,190.00 reduction in compensation, *156 but they maintain that she was adequately compensated.
Awards for past lost wages are not susceptible to the great discretion given the fact finder, because past lost income is susceptible to mathematical calculation. Robbins v. State ex rel. Department of Labor, 31,590 (La.App.2d Cir.2/24/99), 728 So.2d 991.
The jurisprudence supports Mrs. Beasley's argument that the sabbatical was a fringe benefit for which she is entitled to recover. In Jones v. Hyatt Corporation of Delaware, 94-2194 (La.App. 4th Cir. 7/26/95), 681 So.2d 381, a hotel guest was injured in a fall in a hotel corridor. She took a sabbatical from her teaching position to recuperate. In that case, the court found that, even though the plaintiff received a portion of her salary during the sabbatical, she was entitled to recover the entire amount she could have earned during that year. The court found that because the plaintiff was forced to take a year's sabbatical, which accrued after six consecutive years of employment, she lost the opportunity to take her accrued leave for other reasons, such as returning to school. The decision to allow the plaintiff to recover was supported by previous cases which allowed a plaintiff to recover as lost wages for the use of sick leave or annual accrued leave to recuperate from injuries. This reasoning is based upon the collateral source rule which precludes a tortfeasor from obtaining a reduction in damages because of payments through insurance or employee benefits from sources independent of the tortfeasor's procuration or contribution. Hawthorne v. Southeastern Fidelity Insurance Company, 387 So.2d 26 (La.App. 3d Cir.1980). See also Vogt v. Hotard, 144 So.2d 714 (La.App. 4th Cir.1962); Teal v. Allstate Insurance Company, 348 So.2d 83 (La.App. 4th Cir.1977), writ denied, 351 So.2d 164 (La.1977).[1]
However, we reject Mrs. Beasley's argument in brief that the value of the sabbatical was $40,082.00, representing her salary of $30,892.00 plus the $9,190.00 in salary she did not receive while on sabbatical. Melvin W. Harju, an expert in economics, testified on behalf of the plaintiffs. He stated that Mrs. Beasley's salary during the year she was on sabbatical would have been $30,892.00. She was actually paid $21,702.00, which was $9,190.00 less than her regular salary. According to the witness:
The long and short of it is that she lost a year's worth of income. It's $30,892 for that year. It's just that straightforward.... So what her loss was was an out-of-pocket expense of $9,190 plus the loss of sabbatical of $21,702, or that year's loss, $30,892.
Accordingly, we find that the amount Mrs. Beasley is entitled to recover for lost past income is $30,892.00.

FUTURE LOSS OF WAGES
The jury awarded Mrs. Beasley $12,000.00 in future loss of wages. The plaintiffs argue that in making this award, the jury must have concluded that Mrs. Beasley suffered a disability. They assert that the duration of the disability and the amount of the loss were established by Dr. Ware and by Dr. Harju. Dr. Ware testified that Mrs. Beasley needed to remain off work for an additional one to two years. Mrs. Beasley urges that she has a residual disability for at least one to two years and that her economic loss will be $39,205.00 for one year and $78,656.00 for two years. Therefore, she maintains that the jury *157 erred in failing to make an award in accordance with those figures.
Since awards for future lost income are inherently speculative and intrinsically insusceptible of being calculated with mathematical certainty, the court must exercise sound judicial discretion to determine those awards. The awards should be consistent with the record and not work a hardship upon either party. Robbins v. State ex rel. Department of Labor, supra. The factors to be considered in determining loss of future income include the plaintiff's physical condition before and after the injury; the age and life expectancy, prior to and after the accident; previous earnings; work record; the amount the plaintiff probably would have earned absent the injury; and the probability he would have continued to earn wages over the balance of his working life. Kose v. Cablevision of Shreveport, supra.
It is the plaintiff's burden of proving that his disability will cause him to suffer a lack of income. Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987). In computing loss of future income, it is necessary to determine whether and for how long a plaintiff's disability will prevent him from engaging in work of the same or similar kind that he was doing at the time of the injury. A determination must also be made of whether the plaintiff has been disabled from work for which he is fitted by training and experience. Kose v. Cablevision of Shreveport, supra.
In the present case, Mrs. Beasley continued to have severe headaches and shoulder, arm, and neck pain. Dr. Rambach referred Mrs. Beasley to Dr. Ware who first saw Mrs. Beasley on September 14, 1998. At that point, she was complaining of right shoulder and arm pain as well as headaches and memory problems. Dr. Ware determined that Mrs. Beasley was not suffering from short term memory loss, but did have anxiety and depression. She is also obsessive-compulsive and is a perfectionist with a low threshold for pain. Dr. Ware found that Mrs. Beasley tended to exaggerate her symptoms. He prescribed medication and counseling. Mrs. Beasley was started on a course of sessions with Dr. Ware's psychiatric social worker, Dana Hornby. Dr. Ware noted that the defendants obtained an independent examination of Mrs. Beasley by Thomas Staats, a neuropsychologist. Dr. Staats found that Mrs. Beasley has a major depressive disorder, mild to moderate dysthymic disorder, chronic depression, generalized anxiety disorder, and is preoccupied with physical symptoms and findings in her body. She also has a pain disorder. The record does not show that Mrs. Beasley was receiving psychiatric care prior to the accident. Dr. Ware determined that Mrs. Beasley needs one to two years of counseling before she returns to work on a continuing basis. However, Dr. Staats determined that continuing to work would be beneficial for Mrs. Beasley.
The record shows that the accident occurred in August 1996 and Mrs. Beasley taught during the 1996-1997 school year with some difficulty. She then took a one year sabbatical during the 1997-1998 school year. During that year, she was treated by a chiropractor. She also joined a health club and performed aerobic exercise approximately three times per week. Mrs. Beasley felt that this regimen improved her symptoms. For the 1998-1999 school year, Mrs. Beasley returned to the classroom and was assigned to teach high school computer courses. Prior to the beginning of the 1998-1999 school year, the plaintiff took a workshop to prepare for her new duties. She was also required to travel to several schools during the year. Mrs. Beasley felt that she was not prepared for her new assignment and began experiencing more problems with headaches, neck, shoulder and arm pain. However, with the help of counseling, she was able to complete the school year and even took on some extracurricular activities at school.
*158 Given the conflicting testimony by the experts, it appears that the jury concluded that Mrs. Beasley might be off work for a limited amount of time, but not the one or two years suggested by Dr. Ware. Under the facts presented, we do not find that the jury's award for lost wages constitutes an abuse of discretion and is affirmed.

PAST MEDICAL EXPENSES
The jury awarded Mrs. Beasley $9,000.00 in past medical expenses. The plaintiffs contend that this was below the amount stipulated by the parties. The plaintiffs assert that the trial court erred in failing to grant a JNOV awarding the entire amount of the claimed medical expenses, $15,445.45.
A plaintiff's recovery of medical charges must be confined to those expenses related to the accident. Harper v. Garcia, 32,142 (La.App.2d Cir.8/18/99), 739 So.2d 996. A tortfeasor is required to pay for the cost of overtreatment or unnecessary medical treatment unless the overtreatment was incurred by the victim in bad faith. White v. Wal-Mart Stores, Inc., 32,621 (La.App.2d Cir.3/3/00), 753 So.2d 995. A jury is in error for failure to award the full amount of medical expenses proved by a victim. Sumrall v. Sumrall, 612 So.2d 1010 (La.App. 2d Cir.1993).
The stipulation specifies that medical bills and charges would be admitted without the necessity of having to call any witnesses to verify the authenticity or admissibility of the charges, but reserving the parties' right to call such witnesses (live or by deposition) and the defendants' right to contest the necessity or causation of those services. The total amount claimed in the stipulation for past medical expenses was $12,950.45. The agreement specifies that Dr. Ware's charges would be updated at trial. An itemized statement was admitted at trial showing that the plaintiff's charges for his office totaled $2,600.00.
According to the plaintiffs, they proved that Mrs. Beasley's medical expenses were in excess of the $9,000.00 awarded by the jury. The plaintiffs argue that the stipulation regarding medical expenses constitutes a judicial confession that the amounts were owed. This argument is without merit. In Sherman v. K.D. Auger Trucking, Inc., 607 So.2d 921 (La.App. 2d Cir.1992), this court specified that a plaintiff cannot recover stipulated medical expenses incurred for treatment of a condition not proven to have been caused by the defendant's conduct.
The defendants argue that not all of Mrs. Beasley's expenses are recoverable because they are not related to the accident and because she failed to mitigate her damages by submitting to treatment suggested by her doctors.
The record supports Mrs. Beasley's claim that she was injured in the accident. She hit her head and then began having frequent, debilitating headaches, as well as having neck pain. She later developed right shoulder and arm pain. Approximately two months after the accident, Mrs. Beasley saw Dr. Rambach complaining of headaches, and low back pain. She had tenderness and bruising in the right occipital region and tenderness in her neck with no muscle spasm. In her cervical spine, she had straightening of the lordotic curve and narrowing of the disc space in her neck and back. Dr. Rambach determined that Mrs. Beasley had suffered a mild cerebral concussion in the accident. He prescribed a pain reliever and a muscle relaxant. He also prescribed physical therapy. The plaintiff took some physical therapy sessions from October 17-30, 1996. Dr. Rambach then transferred Mrs. Beasley to another physical therapist for convenience. Mrs. Beasley did not complete the prescribed course of physical therapy. She again tried physical therapy during May and July 1997. Mrs. Beasley complained of headaches, neck and shoulder pain which became worse with driving. Again she did not complete the full course of physical therapy.
*159 On January 24, 1997, Mrs. Beasley was seen by Dr. Rambach's colleague, Dr. William W. Fox, for tendinitis of the right rotator cuff. During this time, Mrs. Beasley also sought treatment from Dr. John Lawrence, a chiropractor, who was still treating her regularly at the time of trial.
In August 1997, Dr. Rambach referred Mrs. Beasley to a neurologist, Dr. Juanita McBeath, for evaluation of her headaches. Dr. McBeath found Mrs. Beasley's complaints to be credible and determined that Mrs. Beasley sustained low impact trauma related to the accident. She stated that if these type headaches do not resolve themselves withing six months of the impact, then the patient will probably have the headaches for the remainder of his or her life. However, the headaches could be treated with the intravenous administration of dihydroergotamine (DHE), along with anti-depressants and anti-seizure medication. Dr. McBeath stated that this is a very effective treatment for headaches of the type experienced by Mrs. Beasley.
Mrs. Beasley then consulted a neurologist of her own choosing, Dr. Nabil Moufarrej. Dr. Moufarrej determined that Mrs. Beasley's headaches were induced by trauma to the head. He also stated that the DHE treatment was indicated. He stated this treatment has an 80-90% success rate. Mrs. Beasley declined the treatment but continued to periodically see Dr. Moufarrej. He then determined that the plaintiff was having analgesic rebound headaches caused by the continued use of over-the-counter and prescription pain relievers. Dr. Moufarrej was concerned that Mrs. Beasley was overusing medications. He testified that because Mrs. Beasley was not willing to follow his prescribed course of treatment, he could not offer her much help. He stated, "Her refusal to receive treatment, in my opinion precipitated continuation of the problem so she didn't get better in my opinion."
Mrs. Beasley returned to Dr. Rambach who found that she was becoming increasingly depressed. He referred her to Dr. Ware who found that mental health components were interfering with Mrs. Beasley's recovery from the accident. The findings regarding Mrs. Beasley's mental health are discussed at length elsewhere in this opinion. In short, the record shows that Mrs. Beasley's mental state prevented her from relinquishing control to her physicians and submitting to treatment prescribed by them. The defendants contend that a number of the claimed medical expenses were not related to this accident. Therefore, the jury did not err in failing to make an award for the full amount of medical expenses claimed by the plaintiffs. The defendants point out that Dr. William W. Fox saw the plaintiff in Dr. Rambach's absence when she first complained of pain in her right shoulder. This occurred on January 24, 1997, several months after the accident. Mrs. Beasley's shoulder complaints began after a drinking glass slipped in her hand and she jerked suddenly in an attempt to catch it. Dr. Fox determined that the plaintiff had tendinitis in the rotator cuff of her shoulder. He testified that if the plaintiff did not complain of this pain until several months after the accident, then the accident did not cause the injury. According to Dr. Fox, tendinitis is caused by overuse and not disuse.
Dr. Rambach acknowledged that the shoulder pain was not among Mrs. Beasley's original complaints following the accident, but opined that it may have been caused by not using the shoulder as she normally does. The plaintiffs acknowledge the difference of opinion, but point out that if Dr. Fox's treatment of the plaintiff for rotator cuff tendinitis is excluded, his bill is only $186.00.
The defendants also object to the charges by Dr. Kevin Murphy, a family practice physician. They contend that Dr. Murphy treated Mrs. Beasley for a thyroid problem which was unrelated to the accident. The record supports the defendants' argument that Dr. Murphy did not *160 treat Mrs. Beasley for any condition or injury related to the accident.
The plaintiffs concede in their reply brief that the amount charged by Dr. Sam Silverblatt, an optometrist, $342.00, was not related to this accident.
The defendants also objected to any award for charges by Dr. John Lawrence, a chiropractor. Dr. Lawrence testified that he first saw Mrs. Beasley on December 12, 1997. She complained of headaches, neck pain, arm and shoulder pain. His x-rays were consistent with the kind of symptoms Mrs. Beasley was having. He acknowledged that she had some degenerative changes, but that was only one of the causes of Mrs. Beasley's complaints. The defendants point to Mrs. Beasley's x-rays which show that she had some degenerative changes to her neck and back unrelated to the accident and that chiropractic care would not have been necessary if Mrs. Beasley had taken her physical therapy as prescribed by Dr. Rambach. However, as stated above, a tortfeasor is obligated to pay for overtreatment or unnecessary medical treatment, unless incurred by the victim in bad faith. In this case, there is no showing that Mrs. Beasley was in bad faith in seeking chiropractic treatment. It also appears from the record that Mrs. Beasley sought such treatment due to the injuries sustained in this accident. Therefore, the defendants are liable for this element of damages.
It is not clear how the jury arrived at the figure of $9,000.00 for past medical expenses. We cannot say with certainty which items of medical expenses the jury found were not proven to be related to the accident. After a review of the evidence presented, we find that the jury erred in failing to make an adequate award and the trial court erred in failing to grant JNOV on this issue. However, the plaintiffs are not entitled to recover for all their claimed expenses. As discussed above, we find that Mrs. Beasley is entitled to recover for past medical expenses as follows:

Balentine Ambulance $ 405.00
HCA Highland Hospital $ 598.20
South Shreveport Family Practice Clinic
Dr. Leopard $ 55.00
Bossier Medical Center $ 3,467.50
Mid South Orthopaedics $ 1,105.50
Eberhardt Physical Therapy $ 363.64
Dr. Juanita McBeath $ 75.00
The Neurology and Sleep Clinic $ 1,279.00
Lawrence Chiropractic Clinic $ 3,337.00
Dr. Paul Ware
-Dr. Lisa Harper
-Ms. Dana Hornby, BCSW $ 2,600.00
Eckerd Pharmacy $ 293.40
Rite Aid Pharmacy $ 28.21
_________________ __________
Total $13,607.45

Therefore, the jury verdict and trial court judgment are amended to reflect that the plaintiffs proved entitlement to $13,607.45 in past medical expenses.

FUTURE MEDICAL EXPENSES
Mrs. Beasley contends that the jury erred in failing to award the proper amount of future medical expenses after finding that future medical treatment was necessary. Mrs. Beasley asserts that in awarding $5,000.00 for future medical expenses, the jury must have accepted Dr. Ware's opinion that future treatment related to the accident was necessary. Therefore, she contends that the jury should have awarded the full amount claimed for future medical expenses, $30,454.00.
According to the defendants, Mrs. Beasley had a history of magnifying her symptoms and failing to follow through with prescribed courses of treatment. Therefore, the jury was reasonable in concluding that the entire amount for future medical expenses claimed by Mrs. Beasley would not be needed.
Future medical expenses, like any other damages, must be established with some degree of certainty, and an award of such cannot be predicted on mere speculation. Awards for future medical expenses that may or may not be incurred require medical testimony that they are indicated and their probable cost. Morris v. United Services Automobile Association, 32,528 (La.App.2d Cir.2/18/00), 756 So.2d 549. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award. Veazey v. State Farm Mutual Automobile Insurance, 587 So.2d 5 (La.App. 3d Cir.1991).
*161 Dr. Ware testified as to the future medical treatment needed by Mrs. Beasley. He stated that she needed counseling every two weeks for six months to a year; after that, she will need counseling once per month for one year. These sessions cost $75.00 per hour. The estimated cost of counseling for two years was $2,700.00. Dr. Ware also testified that Mrs. Beasley would also need medication checks once per month for one year and four times during the second year at $75.00 to $100.00 per check. Regarding medication, Mrs. Beasley was taking Buspar, Celexa and Wellbutrin at a cost of $75.00, $60.00, and $50.00 per month, respectively. Dr. Ware testified that Celexa might be dropped after one year and Wellbutrin might be discontinued after the second year, but Mrs. Beasley would need to take Buspar for the remainder of her life.
The jury could have decided that some future medical costs would be necessitated by the accident but that not all the treatment outlined would be needed. The award made is within the jury's discretion.

GENERAL DAMAGES TO MRS. BEASLEY
The plaintiffs argue that the jury award of $10,000.00 for past pain and suffering was inadequate and that the jury erred in failing to make any award for future pain and suffering. They also argue that the trial court erred in failing to grant JNOV on this issue.
La. C.C. art. 2324.1 provides that in the assessment of damages, much discretion must be left to the judge or jury. To modify an award for general damages, an appellate court must find that the trial judge or jury has abused the "much discretion" accorded by the statute. Stegall v. State Farm Mutual Automobile Insurance Company, 29,986 (La.App.2d Cir.10/29/97), 702 So.2d 66. With respect to the award of general damages, each case must be weighed and evaluated according to its own particular facts and circumstances. Stegall v. State Farm Mutual Automobile Insurance Company, supra.
General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of life or lifestyle that cannot be measured definitively in terms of money. Kose v. Cablevision of Shreveport, supra. The primary objective of general damages is to restore the injured party in as near a fashion as possible to the state he was in at the time immediately preceding the injury. There is no mechanical rule for determining general damages; the facts and circumstances of each case control. Kose v. Cablevision of Shreveport, supra. The factors to be considered in assessing quantum for pain and suffering are severity and duration. There is no rule or standard of law fixing or establishing the amount of recovery and each case, consequently, must rest on its own set of facts. Stegall v. State Farm Mutual Automobile Insurance Company, supra.
The discretion vested in the trier of fact is "great" and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of a particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
In the present case, it was established that Mrs. Beasley suffered a mild concussion, as well as soft tissue injuries in the accident. The concussion has left her with headaches that probably will persist for the remainder of her life. None of the medical experts testified that Mrs. Beasley was malingering. However, the record shows that there are mental health components to Mrs. Beasley's injuries which are interfering with her willingness *162 to undergo treatment for her headaches. Thomas Staats, a clinical neuropsychologist who examined Mrs. Beasley for the defendants, found her to be a symptom magnifier and that she has a problem relinquishing control to the physicians attempting to treat her. He found her to an obsessive-compulsive perfectionist with a major depressive disorder and generalized anxiety disorder. She also has a pain disorder associated with psychological factors. According to Dr. Staats, she had mixed headache syndrome and a personality disorder. There is disagreement as to whether Mrs. Beasley can work for the next two years while receiving counseling. Dr. Ware testified that she could not work during that time period. Dr. Staats testified that she should continue to work. This opinion was also shared by Mrs. Beasley's neurologist, Dr. Moufarrej.
By their findings, the jury made factual determinations that Mrs. Beasley would need future medical care and would suffer a loss of wages due to her injuries. Under these facts, we find that it was error for the jury to fail to award damages for future pain and suffering.
We have reviewed awards in cases with similar injuries and we find that a general damage award of $20,000.00 for pain and suffering, past and future, is appropriate in this case.

LOSS OF CONSORTIUM
The plaintiffs contend that the jury erred in failing to award adequate damages for loss of consortium. Regarding Mr. Beasley, they argue that before the accident, he and his wife enjoyed playing tennis and other social activities. Since the accident, Mrs. Beasley is withdrawn and depressed, doesn't play tennis, doesn't do household chores and is not as receptive to intimacy as before the accident. The plaintiffs contend that Mr. Beasley should receive at least $7,500.00 for his loss of consortium. Additionally, the plaintiffs argue that the loss of consortium awards to Mrs. Beasley's three children were inadequate and should be raised to $2,500.00 each.
The decision whether to award damages for loss of consortium is left to the discretion of the fact finder. An appellate court should not disturb a determination that a plaintiff is not entitled to an award for loss of consortium absent an abuse of the fact finder's discretion. Wood v. Toys R Us, Inc. 28,667 (La.App.2d Cir.9/25/96), 681 So.2d 49.
Under La. C.C. art. 2315, damages may include loss of consortium, service and society. Loss of consortium is recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Loss of consortium can involve loss of love and affection, loss of society and companionship, impairment of sexual relations, loss of performance of material services, loss of financial support, loss of aid and assistance, and loss of fidelity. To be compensable, it is not necessary for a claim for consortium to include damages for each type of loss. Robbins v. State ex rel. Department of Labor, supra.
As to their home life since the accident, Mr. Beasley said that in terms of intimacy, "Well, we're just not on the same page like we were before. We're not as compatible." As to his wife's ability to perform her usual duties around the house, Mr. Beasley testified, "Trish still is able and willing at most points to do the things that she had done in the past. There are just times when her headaches get debilitating and she is just unable to take care of some things." Mr. Beasley, who is a petroleum landman, testified that he works out of town frequently and has probably been gone about 75% of the time he has been married to Mrs. Beasley.
Given the testimony by Mr. Beasley that his wife is able at most points to do things she did prior to the accident and his testimony that he is frequently not at home, coupled with the surveillance videos showing Mr. and Mrs. Beasley out at restaurants together and at the movies, we find that the jury did not abuse its discretion in *163 failing to make an award to Mr. Beasley for loss of consortium.
Mrs. Beasley's children, Justin, Blake and Ashley McLawchlin, testified that their mother is more irritable since the accident and the children have taken on more of the household duties. However, the record does not show that the children have had to spend significantly more time working around the house as a result of the accident. Justin and Blake work outside the home in addition to attending school. Blake testified that the family, including his mother, were still able to go on vacations to San Antonio, Texas, and to Destin, Florida, since the accident. Based upon our review of the record, we do not find that the jury abused its discretion in the awards for loss of consortium made to the McLawchlin children.

CONCLUSION
For the reasons stated above, we affirm the jury verdict and trial court judgment granting past medical expenses in the amount of $500.00 to Calvin Beasley. We affirm the trial court's JNOV granting Calvin Beasley an award for past pain and suffering in the amount of $1,500.00. We affirm the jury verdict and trial court judgment denying Calvin Beasley's request for damages for loss of consortium. We affirm the jury verdict granting Justin and Bake McLawchlin $500.00 each for loss of consortium and $1000.00 in loss of consortium to Ashley McLawchlin. We affirm the trial court judgment refusing to grant JNOV to increase the loss of consortium award as to the McLawchlin children. We also affirm the jury verdict and trial court judgment awarding Patricia Beasley $12,000.00 in lost future wages and $5,000.00 in future medical expenses.
We amend the jury verdict and trial court judgment on the issue of past lost wages, past medical expenses, and past and future pain and suffering regarding Patricia Beasley. Judgment is hereby rendered against the defendants and in favor of the plaintiffs in the following amounts:

Patricia Beasley
----------------
 Past medical expenses $13,607.45
 Future medical expenses $ 5,000.00
 Past and Future Pain, Suffering, Mental
 Anguish and Loss of Quality and
 Enjoyment of Life $20,000.00
 Past Lost Wages $30,892.00
 Future Lost Wages $12,000.00
 ----------
 Total $81,499.45
Calvin Beasley
--------------
 Past Medical Expenses $ 500.00
 Past Pain, Suffering, Mental Anguish
 and Loss of Quality and Enjoyment
 of Life $ 1,500.00
 Loss of Consortium 0
 ----------
 Total $ 2,000.00
Justin McLawchlin
-----------------
 Loss of Consortium $ 500.00
Blake McLawchlin
----------------
 Loss of Consortium $ 500.00
Ashley McLawchlin
-----------------
 Loss of Consortium $ 1,000.00

Costs of this appeal to be paid by the defendants.
AFFIRMED IN PART AND AMENDED IN PART; AS AMENDED, AFFIRMED.
NOTES
[1] We are mindful of the holding in James v. Childs, Division of Kroger Company, 166 So.2d 77 (La.App. 3d Cir.1964), in which a teacher was injured in a slip and fall in a grocery store, suffering an ankle laceration. She took a sabbatical for a hysterectomy and had excision of the scar tissue on her ankle at the same time. The trial court found that twenty days of her sabbatical was attributable to the ankle recovery, but the plaintiff was not entitled to the entire amount of the sabbatical since the injuries emanating from the accident did not cause her to lose her sabbatical.