Judgment rendered March 9, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,198-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SHARON GLOVER                                    Appellant

versus

CHERYL BEAIRD PREECE,                            Appellees
DARREL G. PREECE, XYZ
INSURANCE COMPANY
AND JOHN DOE

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 45,535

Honorable Jeffrey Levance Robinson, Judge

* * * * *

SMITH & NWOKORIE, LLC                    Counsel for Appellant
By: Brian G. Smith

DAVID F. POST                            Counsel for Appellees,
                                         Cheryl Beaird Preece
                                         and Darrel G. Preece

* * * * *

Before STONE, COX, and STEPHENS, JJ.

**COX, J.**

This appeal arises out of the Third Judicial District Court, Union Parish, Louisiana. Sharon Glover initiated this suit against Cheryl Preece, Darrel Preece, XYZ Insurance Company, and John Doe after colliding with a horse on the highway. The trial court found Mrs. Preece liable for the accident and awarded Mrs. Glover general damages and medical expenses. Mrs. Glover appeals the trial court's dismissal of Mr. Preece and judgment not awarding her lost wages. For the following reasons, we amend the judgment and, as amended, affirm.

## FACTS

On December 7, 2012, Mrs. Glover was driving a Honda Accord and traveling in the northbound lane of Hwy. 549 in Farmerville, Louisiana, when she collided with a horse, causing her vehicle to veer into the southbound lane. As she veered into the southbound lane, Mrs. Glover collided with a vehicle and sustained injuries, which resulted in her being airlifted to St. Francis Medical Center.

Louisiana State Police Sergeant Michael Linton investigated the accident. He determined that the horse came from a pasture owned by Mrs. Preece, which borders Hwy. 549. Sergeant Linton issued a citation to Mrs. Preece for loose livestock, which was later dismissed. Mrs. Preece owned a house and approximately two acres at the site where the horses were determined to be boarded by Sergeant Linton.

On March 13, 2013, Mrs. Glover filed suit against Mr. and Mrs. Preece, their insurer, and John Doe for the following damages: medical expenses; physical pain and suffering; inconvenience; mental anguish;

emotional distress; future medical expenses; and work loss/loss wages. She alleged the Preeces failed to properly maintain and secure the horse. The Preeces denied the allegations. Mr. Preece was later dismissed from the suit upon the trial court finding that the house and property were the separate property of Mrs. Preece. John Doe was dismissed as no one involved in the suit could identify him.

Mrs. Preece testified that she did not know where the horse came from but had previously spoken with a Mexican man about boarding horses. She stated that she did not know the name of the man. She testified that two horses appeared in her pasture when she arrived home from traveling in October 2012, and she began feeding, watering, and caring for them. Mrs. Preece stated she was not home on the night of the accident. She testified that the second horse was not in her pasture when she arrived home and the dead horse was in the back of her pasture. She testified that some men moved the dead horse to the back of the pasture, where it was burned to dispose of it. Neither party submitted photos of the horse, a description of the horse involved in the accident, or a description of the horses kept in the pasture.

Mrs. Glover stated that since the accident, she has had problems with her back, neck, arms, legs, and feet. She testified that she is on disability and has not worked since the accident. Following a bench trial on the matter, the trial court found that Mrs. Preece was the owner of the horse and was therefore liable. Mrs. Glover was awarded $100,000 in general damages and $41,335.01 in medical expenses. Mrs. Glover appeals the

2

damages award, and Mrs. Preece appeals the finding that she was the owner of the horse.

## DISCUSSION

*Lost wages*

Mrs. Glover argues the trial court erred in failing to award her lost wages and future lost wages. She claims that she has not and cannot work as a result of the accident, and therefore, should be entitled to lost wages. Mrs. Preece points out that Mrs. Glover only offered her testimony and medical records as proof of her injury and lost wages. Mrs. Preece asserts that given the evidence produced, Mrs. Glover was awarded a fair amount for her damages.

To recover for actual wage loss, a plaintiff must prove that he would have been earning wages but for the accident in question. *Boyette v. United Servs. Auto. Ass'n*, 2000-1918 (La. 4/3/01), 783 So. 2d 1276; *Thomas v. Boyd*, 51,621 (La. App. 2 Cir. 11/15/17), 245 So. 3d 308, *writs denied*, 2018-0232 (La. 4/16/18), 239 So. 3d 832, 2018-00233 (La. 4/16/18), 240 So. 3d 923. A plaintiff seeking damages for past lost wages bears the burden of proving lost earnings, as well as the duration of time missed from work due to the accident. *Boyette v. United Servs. Auto. Ass'n, supra*; *Thomas v. Boyd, supra.*

Awards for past lost wages are not susceptible to the great discretion given the factfinder, because lost income is subject to mathematical calculation. *Thomas v. Boyd, supra*; *Beasley v. Yokem Toyota*, 33,805 (La. App. 2 Cir. 8/23/00), 767 So. 2d 149. Although lost earnings need not be precisely proven, they must be shown with reasonable certainty. Lost

3

earnings can be computed on the amount the plaintiff would in all probability have been earning at the time of trial. *Thomas v. Boyd, supra.*

Awards for loss of future income are inherently speculative, and are intrinsically insusceptible of being calculated with mathematical certainty. The loss of future wages encompasses the loss of a plaintiff's earning potential—the loss or reduction of a person's capability to do that for which he is equipped by nature, training, and experience, and for which he may receive recompense. In determining a future loss of earning capacity award, factors to be considered are the plaintiff's physical condition before the injury, the plaintiff's past work history and work consistency, the amount the plaintiff would have earned absent the injury complained of, and the probability that the plaintiff would have continued to earn wages over the remainder of his working life. *Thomas v. Boyd, supra*; *Collins v. Shelter Mut. Ins. Co.*, 36,528 (La. App. 2 Cir. 12/11/02), 833 So. 2d 1166, *writ denied*, 2003-0124 (La. 3/21/03), 840 So. 2d 539. Purely conjectural or uncertain future lost earnings will not be allowed. *Davis v. Foremost Dairies*, 45,835 (La. App. 2 Cir. 2/16/11), 58 So. 3d 977, *writs denied*, 2011-0568 (La. 4/25/11), 62 So. 3d 97, 2011-0538 (La. 4/25/11), 62 So. 3d 98.

If it is determined that the trier of fact is clearly wrong, the appellate court is empowered by La. C.C.P. art. 2164 to render any judgment which is just, legal, and proper. Courts of appeal may award damages when the trial court initially rejects plaintiff's demands and where the record contains sufficient proof of damages. In making an initial award of damages at the appellate level, we are not limited to an award of either the lowest or highest amount we would affirm. Instead, we set the award in an amount which is

4

just compensation for the damages revealed by the record.  *Thomas v. Boyd, supra*; *Johnson v. CLD, Inc.*, 50,094 (La. App. 2 Cir. 9/30/15), 179 So. 3d 695.

Mrs. Glover petitioned the court for lost wages and loss of future wages.  The trial court did not award either.  Mrs. Glover stated, and exhibits verify, that she earned $612 every two weeks at her last employer.  She testified that she has not worked since the day of the accident.

Mrs. Glover's medical records reveal that she was discharged from the emergency room on December 8, 2012, with a maxillary fracture, nasal fracture, and facial laceration.  She was instructed to follow up with her primary care provider.  She saw Dr. Mary Wade on December 19, 2012.  Dr. Wade referred her to another doctor and set up an appointment for January 28, 2012.[1]  Although there are medical bills for additional visits with this office in 2013 and in 2015, the medical records with this office have a gap from the December 19, 2012, visit until September of 2017.  There is no record of Mrs. Glover visiting the referral doctor.

Mrs. Glover began seeing Dr. Timothy Green, a chiropractor, on January 3, 2013.  Dr. Green gave Mrs. Glover a work excuse each time she visited, stating she could not return to work and he would reevaluate her in a month.  Her last visit with Dr. Green was June 10, 2013, and he stated in his work excuse, "Please excuse [Mrs. Glover] from work at this time.  Her orthopedic physician has advised intensive physical therapy and orthopedic physician will determine her date for return to work."  There is no medical

---

[1] This information comes from a handwritten medical note.  Therefore, the spelling of the doctor's name is unclear.  It could be a variation of Dr. Sauter or Santar.

record of Mrs. Glover visiting an orthopedic specialist or participating in physical therapy.[2] Her next medical record is a visit with Dr. Wade in September of 2017.

Based on the medical records and work excuses from Dr. Green, Mrs. Glover has met her burden of proving she could not work through June 10, 2013. Because the record is void of any further medical documentation until 2017, we cannot speculate if, or when, a physician would have permitted Mrs. Glover to return to work.

The award of past lost wages is the equivalent of Mrs. Glover's time off work multiplied by her earnings, which we may calculate and render. The accident occurred December 2, 2012, and Mrs. Glover proved she was unable to work through June 10, 2013, which is 27 weeks. In that time, she would have received 13 full paychecks and one-half paycheck for the remaining week. Mrs. Glover earned $612 every two weeks. $612 multiplied by 13 1/2 paychecks is $8,262 in lost wages.

Mrs. Glover did not submit any evidence regarding her loss of future wages. The record is void of any evidence regarding how much Mrs. Glover would have earned in the future or how long she would have worked if not for the accident. Therefore, the trial court was correct in not awarding loss of future wages.

For these reasons, we amend the damages award to include $8,262 in past wages. In all other respects, the damage award is affirmed.

---

[2] The only reference to an orthopedic specialist is in Dr. Green's notes. The record does not contain a medical record or bill from an orthopedic specialist.

*Separate property*

Mrs. Glover asserts that both Mr. and Mrs. Preece should have been liable because they were married and living in the same home where the horses were held. She argues that it should not matter that the home was in the name of Mrs. Preece because they were both sued in their capacity as husband and wife. Mrs. Preece points out that she and Mr. Preece had a separate property agreement before they were married and the home is her separate property. Therefore, she asserts the trial court was correct in dismissing Mr. Preece from the suit.

In cases where classification of property as either community or separate property is the issue, courts hold that this determination is factual and subject to the manifest error standard of review. *Ross v. Ross*, 2002-2984 (La. 10/21/03), 857 So. 2d 384; *Patterson v. Patterson*, 51,929 (La. App. 2 Cir. 5/23/18), 247 So. 3d 1148. Under this standard, a factual finding cannot be set aside unless the appellate court finds that the trial court's determination is manifestly erroneous or plainly wrong. *Patterson v. Patterson, supra.*

Property of married persons is either community or separate. La. C.C. art. 2335. A regime of separation of property is established by a matrimonial agreement that excludes the legal regime of community of acquets and gains or by a judgment decreeing separation of property. La. C.C. art. 2370. A matrimonial agreement, or a judgment establishing a regime of separation of property is effective toward third persons as to immovable property, when filed for registry in the conveyance records of the

parish in which the property is situated and as to movables when filed for registry in the parish or parishes in which the spouses are domiciled. La. C.C. art. 2332. The separate property of a spouse is his exclusively. La. C.C. art. 2341.

A separate obligation of a spouse is one incurred by that spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse. An obligation resulting from an intentional wrong or an obligation incurred for the separate property of a spouse is likewise a separate obligation to the extent that it does not benefit both spouses, the family, or the other spouse. La. C.C. art. 2363.

The trial court found the property, and therefore, the horse, to be the separate property of Mrs. Preece. The record contains the marriage contract between Mr. and Mrs. Preece, which states they will maintain their separate property and keep obligations separate. This contract is recorded in the Union Parish conveyance records. The deed to the house and pasture show Mrs. Preece purchased them before she was married to Mr. Preece. There was no evidence that Mr. Preece in any way cared for or paid for the upkeep of the horses. Based on the facts before us, the trial court was not manifestly erroneous in finding the property was the separate property of Mrs. Preece.

Because we find the trial court did not err in determining the property to be the separate property of Mrs. Preece, we find the trial court did not err in dismissing Mr. Preece from the suit. This assignment of error lacks merit.

*Horse ownership*

Mrs. Preece argues the trial court erred in finding any liability on her part, due to a lack of evidence that the horse involved in the accident was one of the two horses kept at her house. She argues that both horses from her pasture were missing after the accident. She states that no one saw or identified the horse from the accident as being from her pasture. Mrs. Preece asserts that the only connection to her house was the fact that the horse was moved off the road and onto her property.

An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989). To reverse a fact finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993); *Chaney v. Vaughn*, 51,795 (La. App. 2 Cir. 2/28/18), 245 So. 3d 1208.

The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. La. C.C. art. 2321.

9

It shall not be lawful for horses, mules, donkeys, or asses to go on the paved, black-topped and asphalt treated highways of the state system and the rights of way therefor. La. R.S. 3:2851.

As the finder of fact, the trial court is in the best position to determine credibility and weigh evidence. In this case, the trial court found that the horse came from Mrs. Preece's separate property and she exercised care and control over the horse. Mrs. Preece admitted to having two horses in her pasture before she left town and that both horses were missing when she returned. Sergeant Linton stated that he spoke with Mrs. Preece's son and others in the area, who stated the horse came from Mrs. Preece's property.

Mrs. Preece stated she did not know where the horses came from and they just appeared in her pasture one day. She admitted that she did not take steps to determine the previous owner of the horses. She allowed the horses to stay in her pasture, fed them, watered them, and attempted to ride one. Mrs. Preece did not submit any evidence outside of her testimony that it was not her horse and it did not come from her pasture. Given the facts of this case, we find the trial court was not clearly wrong in its determination that Mrs. Preece was the owner of the horse.[3] For these reasons, we affirm the trial court's finding of liability against Mrs. Preece.

## CONCLUSION

For the foregoing reasons, we amend the judgment to include $8,262 in lost wages. In all other respects, we affirm the trial court's judgment.

**AFFIRMED AS AMENDED.**

---

[3] In regard to her liability, Mrs. Preece only argues she was not the owner of the horse. She makes no argument regarding her reasonable care in preventing the horse from escaping the pasture. Therefore, our analysis is limited to her ownership and we need not consider any such reasonable care.