MOORE, J.
 

 |/The plaintiffs 13-year-old daughter and her two friends stood up in the bed of the pickup truck operated by the defendant as they were preparing to leave the parking lot of the Tinseltown movie theater in Shreveport. When the defendant accelerated the vehicle forward, plaintiffs
 
 *494
 
 daughter fell out of the truck and sustained injuries. After a bench trial, the court found that the defendant “improvidently accelerated” the vehicle, causing plaintiffs daughter to suffer a hematoma or “bump on the head.” He awarded the plaintiff $3,000 in general damages and $6,554.10 for the cost of most, but not all, of the medical expenses incurred. The plaintiff appeals both the general and special damage awards, contending that the lowest reasonable amount of general damages that the court could have awarded is $12,000, and the court should have awarded $7,730.10 in medical charges, plus $66.23 for medical record charges.
 

 After review, we amend the special damages award, and, as amended, affirm.
 

 FACTS
 

 After viewing a movie at Tinseltown with his girlfriend and his roommate, Cody Williams met up in the theater parking lot with his 13-year-old sister, Caitlyn, and her two friends, Nicole Loscialo and Kelly Brehmer, ages 12 and 13, respectively. Once they were in the bed of the truck, they suddenly stood up when they saw their friend,
 
 [1]
 
 Farrah Gapes, just as Williams moved the vehicle forward. One of the girls, Kelly Brehmer, fell out of the truck, striking her head on the pavement. Kelly’s [2mother and grandmother were contacted. When they arrived at the parking lot, they took Kelly to the Willis-Knighton Pierremont Emergency Room, where she was examined and treated by the emergency room physician, who ordered a CT scan. The CT scan came back normal, and he released Kelly to go home after approximately one hour and twenty minutes.
 

 Four days later, on November 18, 2008, Kelly went to her primary care physician, Dr. Melita Williams d/b/a Healing Hands Family Medicine, complaining of a slight headache and slight ache in her upper back and neck. Kelly reported no memory loss, vision problems, dizziness or weakness in her arms or legs. Dr. Williams noted that she appeared healthy and in no distress. Kelly’s head and upper back (trapezius) were mildly tender to palpation and there was mild discomfort at the extremes of range in neck motion. She recommended moist heat and stretching for her neck and prescribed a muscle relaxer and anti-inflammatory drug for pain and inflammation.
 

 Three weeks later, on December 9, 2008, Kelly went to see Dr. Eubulus Kerr, III, of the Spine Institute of Louisiana, where Kelly’s mother was employed. Kelly complained of neck, back, shoulder and arm pain and headaches in the area of contact with the pavement. Dr. Kerr assessed these complaints as symptomatic of cervical radiculopathy
 
 [2]
 
 and he ordered an MRI of her cervical spine and an EMG of her left upper extremity. Both the |HMRI and EMG were normal. The report dated January 6, 2009, regarding the EMG test by Dr. David Adams was that there was no electrodiagnostic evidence of radiculopa-thy, neuropathy, myopathy, brachial plexo-pathy, ulnar neuropathy or carpal tunnel syndrome. Dr. Kerr enrolled Kelly in a physical therapy program and referred her
 
 *495
 
 to Dr. John David Googe for assessment of the MRI results and her shoulder.
 

 Kelly reported to Dr. Googe on January 12, 2009 that she had pain in her left shoulder that really bothered her and prevented her from doing the activities she liked such as cheerleading and gym class. The MRI results were normal. Dr. Googe’s assessment was that her pain was caused by scapulothoracic dyskinesis, and he ordered scapulothoracic rehab added to her cervical spine protocol (physical therapy)-
 

 Kelly did not report to physical therapy until March 19, 2009, over two months later. She then missed her next two sessions. Although she was scheduled to attend three sessions per week for four weeks for a total of 12 sessions, she attended only one more session. After that session on March 24, 2009, she was discharged after reporting that she had no complaints of pain or limitations in her abilities to perform the physical requirements of her lifestyle.
 

 Kelly had a follow-up visit with Dr. Kerr on January 14, 2010 and reported mild cervical pain. She said her shoulder pain was better but had no severe pain and her headaches had resolved.
 

 At trial, Kelly testified that she went to physical therapy only two times because they told her she did not need to come back. She said she 14still has headaches and some neck pain and shoulder pain, but that it has gotten better. She stated that Dr. Googe and Dr. Kerr told her not to do cheerleading anymore; however, she was a member of the pep squad at Captain Shreve. She said she did try out for cheerleading but did not make the cut. Kelly said she did not really want to do cheerleading but her mother wanted her too. She said she was afraid of people falling on her.
 

 Under cross-examination, Kelly admitted that she told Dr. Williams that she only had mild discomfort in her neck when she visited her 4 days after the accident. Dr. Kerr sent her to physical therapy, but she did not go until 2 months later and told the therapist she was not having any problems. She also admitted that she told Dr. Williams in her follow-up that she was not having any problems.
 

 Kristy Davenport, who is Kelly’s mother and the plaintiff in this case, now lives in Plano, Texas, and is employed as an office manager for an orthopedic group. At the time of the accident, however, she was employed by Orthopedic Specialists in the front office checking in patients. She brought her daughter to be treated at this clinic (Dr. Kerr and Dr. Gouge) and the associated chiropractic clinic, Spine Specialists. She testified that the accident caused Kelly to gain 50 pounds in four weeks since the accident, and caused her to quit cheerleading, and she had difficulty carrying her book sack.
 

 Dr. Melita Williams testified that she treated Kelly about 3 or 4 days after the incident for the head and neck pain. She prescribed medication. She had been treating Kelly for ADHD with Adderall for several years. She | fisaid she recommended that Kelly go to a chiropractor, but did not follow up on it. Her primary treatment of Kelly involved ADHD. Dr. Williams attributed part of the pre-acci-dent weight gain to the fact that Kelly had grown 2 inches in height during the weight gain period.
 

 After trial, the court stated that it had credibility problems with virtually everyone who testified. Although the liability issue was hotly contested, with conflicting testimony among the witnesses regarding the accident, the court concluded that Cody Williams was at fault when he improvidently accelerated the truck which
 
 *496
 
 caused Kelly to fall out. He concluded that Kelly suffered a hematoma and some soreness of a duration of one month, and he characterized the remaining medical treatment as likely overtreatment, but not under fraudulent circumstances. He awarded special damages to cover the costs for the hospital emergency room visit, the visit to Dr. Melita Williams and the first consultation with Dr. Kerr totaling $6,554.10, and he awarded $3,000 in general damages against the defendant, Progressive Security Insurance Company.
 

 Discussion
 

 The plaintiff appeals the amounts awarded by the court for general and special damages, contending that the trial court abused its discretion and made factual findings that were clearly wrong. Specifically, the plaintiff raises the following six assignments of error:
 

 (1) the record does not provide a reasonable factual basis to support the court’s finding that the plaintiff overtreated for her injuries;
 

 (2) the record provides no reasonable factual basis to support ajsfinding that the plaintiffs injury duration was one month;
 

 (3) the record provides no factual basis to support the credibility determination made against Dr. Melita Williams, an expert in family medicine;
 

 (4) the record provides no factual basis for the credibility determinations of the plaintiff and her minor daughter regarding medical treatment and injuries;
 

 (5) the district court erred as a matter of law in failing to award reasonable general damages; and,
 

 (6) the district court erred as a matter of law in failing to award all special damages claimed.
 

 The first four assignments of error pei*-tain to factual findings and credibility determinations made by the trial court regarding the treatment and duration of Kelly’s injuries resulting from the accident. Our standard of review for factual findings and credibility determinations is well-settled: an appellate court may reverse the findings of the trial court only when a reasonable factual basis does not exist for the finding and the finding is clearly wrong or manifestly in error.
 
 Stobart v. State,
 
 617 So.2d 880, 882 (La.1993);
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989);
 
 Pope v. Prunty,
 
 37,395 (La.App. 2 Cir. 8/20/03), 852 So.2d 1213,
 
 writ denied,
 
 2003-2496 (La.11/26/03), 860 So.2d 1137,
 
 Thomson v. Thomson,
 
 34,353 (La.App. 2 Cir. 1/24/01), 778 So.2d 736. Though an appellate court may surmise that its own evaluations and inferences are reasonable, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable ^inferences of fact should not be disturbed upon review.
 
 Goings v. State,
 
 94-1386 (La.1/17/95), 648 So.2d 884;
 
 Pope v. Prunty, supra; Thomson v. Thomson, supra.
 
 When findings are based on determinations regarding the credibility of witnesses, the manifest error standard accords great deference to the trier of fact’s findings, for only the factfin-der can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what was said. Where a factfinder’s conclusion is based on its decision to credit the testimony of one of two or more witnesses, that determination can virtually never be manifestly erroneous or clearly wrong.
 
 Rosell,
 
 549 So.2d at 845;
 
 Thomson,
 
 778 So.2d at 738.
 

 The task of the reviewing court is not to assess whether the trial court’s factual findings are right or wrong in an absolute sense, nor to determine whether the court of appeal or another trier of fact might reasonably reach a different conclusion from the same evidence, but solely to ask
 
 *497
 
 whether this factfinder’s resolution of the conflicting evidence was reasonable in light of the record as a whole.
 
 See Freeman v. Poulan/Weed Eater,
 
 93-1530 (La.1/14/94), 630 So.2d 733.
 

 After finding that the cause of the accident was the improvident acceleration by Cody Williams, the trial judge concluded that the evidence showed that Kelly suffered “a hematoma and a little soreness” of a month’s duration, but that she was not seriously injured. Specifically, the court noted that Kelly went to Dr. Williams four days after the accident, and there was no objective indication of injury except for the hematoma and Kelly’s |sreport that she was slightly sore. He observed that Kelly’s mother let her return to Caitlyn’s house in a few days or couple of weeks and allowed her to spend the night there again and miss school.
 

 The plaintiff contends that the record does not provide a reasonable basis for the trial court’s findings of fact regarding the extent of Kelly’s injuries and their duration. She contends that the record shows that Kelly obtained medical treatment for over one year in which she complained of neck, head, back and shoulder pain. The defendants, she argues, did not challenge the medical testimony (Dr. Williams) with regard to her treatment and stipulated that Dr. Williams was an. expert in family medicine. The plaintiff also notes that both she and Kelly testified regarding the difficulties experienced after the accident, including Kelly’s weight gain and her decision to quit cheerleading.
 

 We have reviewed the entire record in this case, including the transcript of testimony of all witnesses and the medical records submitted into evidence. We conclude that the medical record supports the trial court’s finding that there was no objective evidence of injury beyond the scalp hematoma and soreness in Kelly’s upper back. Although Kelly reported pain in her neck, back and shoulder, and headaches to Dr. Kerr three weeks after the accident, the MRI and EMG test results were normal and did not show objective evidence of a pinched nerve (cervical radiculopathy). Dr. Kerr sent her to physical therapy, but she did not report for her first session for over two months. She saw Dr. Googe in January and reported “achy pain” in her shoulder, but her MRI was normal. Dr. Googe l9diagnosed scapulothoracic dyski-nesis and ordered a physical therapy regimen added to the protocol of therapy for treatment of cervical radiculopathy that Kelly had not yet started. When Kelly did finally attend physical therapy, she went to one session, skipped two, then went in and reported that she had no pain or problems performing her activities.
 

 We conclude that the record supports the conclusion reached by the trial court that the duration of Kelly’s injury that required medical treatment was approximately one month. Even though Kelly went to see Drs. Kerr and Googe and returned to Dr. Williams once complaining of some pain in her upper back, neck and shoulder, there was no objective evidence of damage from the tests performed. We also note that, although the court stated that the first consultation with Dr. Kerr “may be overtreatment,” the judge did not actually reach the conclusion that it was overtreatment and stated that there was no fraudulent intent. We conclude, therefore, that plaintiffs first two assignments of error are without merit.
 

 On the other hand, we agree with plaintiffs assignment of error that the trial court erred as a matter of law in failing to award all special damages claimed. A plaintiffs recovery of medical charges must be confined to those expenses related to the accident.
 
 Beasley v. Yokem Toyota,
 
 
 *498
 
 33,805 (La.App. 2 Cir. 8/23/00), 767 So.2d 149;
 
 Harper v. Garda,
 
 32,142 (La.App. 2 Cir. 8/18/99), 739 So.2d 996. However, a tortfeasor is required to pay for the cost of overtreatment or unnecessary medical treatment unless the overtreatment was incurred by the victim in bad faith.
 
 Beasley v. Yokem Toyota, supra; White v. Wal-Mart Stores, Inc.,
 
 32,621 (La.App. 2 Cir. 3/3/00), 753 So.2d 995. A jury is in error for failure to award the full amount of medical expenses proved by a victim.
 
 Beasley v. Yokem Toyota; Sumrall v. Sumrall,
 
 612 So.2d 1010 (La.App. 2 Cir.1993). Inasmuch as the court found no fraudulent intent in this case, the trial court erred as a matter of law in failing to award special damages for all medical expenses related to this injury, including the cost of medical reports.
 

 By her third, fourth, and fifth assignments of error, the plaintiff contends that the record provides no factual basis to support the credibility determinations made against Dr. Melita Williams, an expert in family medicine, and the credibility determinations of the plaintiff and her minor daughter regarding medical treatment and injuries, and that the district court erred as a matter of law in failing to award reasonable general damages.
 

 Our review of the trial court’s oral reasons indicate that the trial court stated that it had credibility problems with virtually everyone who testified at trial. Dr. Williams, the plaintiff and her daughter were among the witnesses called to testify at trial; however, neither the trial court nor the plaintiff indicate exactly what testimony the court found not to be credible.
 

 The principle that questions of credibility are for the trier of fact to resolve applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound.
 
 Cain v. Cain,
 
 39,903 (La.App. 2 Cir. 5/11/05), 903 So.2d 590,
 
 writ denied,
 
 2005-1517 (La.6/15/05), 904 So.2d 679,
 
 cert. denied,
 
 546 U.S. 978, 126 S.Ct. 563, 163 L.Ed.2d 462 (2005);
 
 Bonnette v. Conoco Inc.,
 
 2001-2767 (La.1/28/03), 837 So.2d 1219. After h weighing and evaluating expert and lay testimony, the district court may accept or reject the opinion expressed by any expert. The weight given to expert testimony depends on the professional qualifications and experience of the expert and the facts upon which the opinion is based.
 
 Jones v. Jones,
 
 38,790 (La.App. 2 Cir. 6/25/04), 877 So.2d 1061;
 
 Verret v. Verret,
 
 34,982 (La.App. 2 Cir. 5/9/01), 786 So.2d 944.
 

 Dr. Melita Williams testified regarding her medical treatment of Kelly Brehmer. The evidence file also contains the medical records of her treatment of Kelly for the injury sustained on November 14, 2008, as well as the medical records of several other office visits before and after the accident. Dr. Williams stated that the injury Kelly sustained could affect her ability to participate in activities such as cheerlead-ing or sports due to postconcussive syndrome. However, she admitted to the court, when questioned by the trial judge, that there was no evidence of concussion or brain injury. Regarding Kelly’s weight gain, Dr. Williams said Kelly’s changes in ADHD medication, problems in mood and depression, and reduced activity could contribute to weight gain. On cross-examination, Dr. Williams noted that although Kelly had gained 24 pounds between March 24, 2008 and the accident, she had grown 2 inches during that period. She agreed that the substantial weight gain during the summer of 2009 was possibly the result of going off Adderall. Finally, she agreed that there are many possible factors that led to the weight gain.
 

 Kelly’s mother, Kristy Davenport, testified that the accident caused Kelly to cease
 
 *499
 
 cheerleading and all activities resulting in her gaining 50 Impounds and losing her self-esteem. She stated that her daughter still complains of neck pain.
 

 As previously noted, Kelly testified that she tried out for the cheerleading squad after the accident, but did not make the cut. She stated that she really did not want to participate in cheerleading any more because she was afraid that she would hurt herself. Kelly did not remember what she told Dr. Williams regarding her pain on November 18, 2008, although she said that her neck and back hurt. She had no explanation for why she did not go to physical therapy for 2 months after Dr. Kerr recommended her to go. She admitted that she went to spend the night at Caitlyn’s a week or two after the accident and did not mention any physical complaints.
 

 After reviewing the testimony of the three witnesses, we conclude that the trial court was not clearly wrong in its finding that the damages Kelly suffered were of one month’s duration. The court apparently did not find that the accident caused Kelly to stop her cheerleading, nor was it the cause of her weight gain.
 

 The trier of fact is given great and even vast discretion in setting general damage awards, and an appellate court should rarely disturb an award of general damages.
 
 Youn v. Maritime Overseas Corp.,
 
 628 So.2d 1257 (La.1993),
 
 cert. denied,
 
 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 879 (1994). The initial inquiry in appellate review of general damages is “whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the ‘much discretion’ of the trier of fact.”
 
 Youn,
 
 623 So.2d at 1260.
 

 113Only when the award is in either direction beyond that which a reasonable trier of fact could have assessed for the effects of the particular injury on the particular plaintiff under the particular circumstances should the appellate court reduce or increase the award.
 
 Youn,
 
 623 So.2d at 1261. The award may then be raised or lowered only to the highest or lowest point reasonably within the discretion of the trier of fact.
 
 Orea v. Scallan,
 
 32,622 (La.App. 2 Cir. 1/26/00), 750 So.2d 483. An appellate court should view the evidence in the light most favorable to the plaintiff in deciding whether an award is excessive.
 
 O’Brien v. Remington Arms Co.,
 
 601 So.2d 330 (La.App. 2 Cir.1992),
 
 writ denied,
 
 604 So.2d 1003 (La.1992). If an articulated factual analysis shows an abuse of discretion by the trier of fact, then the appellate court may look to prior awards to determine the highest or lowest point within the trier of fact’s discretion.
 
 Youn,
 
 623 So.2d at 1260.
 

 The appellant suggests that the lowest reasonable award for general damages is $12,000 based upon the award in
 
 Smith v. Ebey,
 
 2004-889 (La.App. 3 Cir. 12/29/04), 896 So.2d 143, which awarded that amount of general damages for a plaintiff with a six-month soft tissue injury.
 

 Although the award in this instance is at the lower end of the spectrum, because we find that the trial court was not clearly wrong in its conclusion that the plaintiff suffered only a hematoma and soreness of about one month’s duration, we conclude that the trial court did not abuse its discretion in awarding general damages of $3,000.
 

 Accordingly, this assignment is without merit.
 

 1^Conclusion
 

 For the foregoing reasons, we amend and increase the judgment awarding special damages against Progressive Security
 
 *500
 
 Insurance Company to $7,730.10 plus $66.23 medical record charges. In all other respects, the judgment is affirmed. Each party shall bear its own costs.
 

 JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.
 

 [1]
 

 . There were several conflicting accounts at trial regarding whether the other two girls were seated in the back of the pickup and then stood up when Kelly spotted Farrah Gapes.
 

 [2]
 

 . Cervical radiculopathy is the damage or disturbance of nerve function that results if one of the nerve roots near the cervical vertebrae is compressed. Damage to nerve roots in the cervical area can cause pain and the loss of sensation in various upper extremities, depending on where the damaged roots are located.