LOLLEY, J.
| franklin Scott appeals the judgment of the First Judicial District Court, Parish of Caddo, State of Louisiana, in favor of the defendant, the Parish of Caddo. For the following reasons, we affirm the trial court’s judgment.
FACTS
On March 29, 2009, at 12:05 p.m., Scott was driving a tractor/trailer rig carrying saltwater west on Keatchie-Marshall Road in Caddo Parish, Louisiana. Although Scott had already traveled this section of road several times that day, a 90-foot pine tree located on private property had fallen across the road blocking both lanes since the last time he passed through. The tree had fallen across the road only 45 minutes prior to Scott’s arrival and no emergency crews had had an opportunity to respond. Scott failed to see the fallen tree in time to avoid it and hit the tree with his truck. Scott’s truck slid 350 feet from the point of impact, hitting various other trees before coming to a rest. As a result of the accident, Scott suffered serious injury to his neck.
In his original petition, Scott filed a suit for personal injury against the Parish of Caddo (the “Parish”), property owners Roger and Marilyn Connell, and State Farm Fire and Casualty Company (“State Farm”) for failure to maintain the right of way from potentially hazardous conditions. Subsequently a settlement was reached with the Connells and State Farm, and Scott reserved his right to proceed against the Parish.
Scott’s claim against the Parish was tried in a bench trial. After reviewing all the evidence, the trial court concluded that Scott failed to |2prove the Parish had actual or constructive notice of the dangerous condition posed by the dead tree prior to the collision and, therefore, the Parish was *610 not Hable for damages. Judgment was rendered in favor of the Parish, and this appeal by Scott followed.
DISCUSSION Admissibility of Evidence
Initially, we address Scott’s assignment of error regarding the evidence considered at trial. Scott asserts that the trial court erred by relying on “incompetent, inadmissible evidence” concerning the policies and procedures of neighboring Webster and Bossier Parishes. We disagree.
Evidence is relevant whenever it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. La. C.E. art. 401. The trial court is granted broad discretion in its evidentia-ry rulings, which will not be disturbed on appeal absent a clear abuse of that discretion. Hays v. Christus Schumpert Northern La., 46,408 (La.App.2d Cir.09/21/11), 72 So.3d 955.
The Parish first called Ronnie Andrews, the Public Works Director for the Bossier Parish Highway Department. Andrews had been an employee of that department for almost 30 years. Next, the Parish called Teddy Holloway, the Public Works Director for the Webster Parish Highway Department. Holloway had been employed by the Webster Parish Highway Department for 14 years. Both witnesses discussed the mileage and type of roadway which they were responsible for maintaining. The | ^witnesses also testified to their departments’ policies concerning when to inspect a road and how a road inspection is completed.
The testimony from Ted Holloway and Ronnie Andrews concerning the practices of Webster and Bossier Parishes, respectively, was not incompetent or inadmissible. The record reflects that both witnesses had personal knowledge of the policies and practices of their respective parishes gained from years of work experience. Additionally, the testimony was relevant in that it covered the practices used by neighboring parishes with similar conditions and hazards as the Parish and went to show that the practices employed by the Parish were not exceptional but rather customary among similarly situated parishes. As previously stated, the trial court is granted wide discretion in its evidentia-ry rulings, and we do not find rebanee on this evidence to be an abuse of that discretion. Furthermore, even if the testimony of these witnesses was inadmissible, the error would be harmless as their testimony was generally corroborated by expert witness Joseph Blaschke. This assignment of error is without merit.

Knowledge of the Hazardous Condition

Scott also argues that the trial court erred by finding that the Parish did not have constructive notice of the dead tree before it fell onto Keatchie-Marshall Road. Specifically, Scott claims that because of the bright red needles at the crown of the tree and a distinct lack of bark along the trunk of the tree, both of which he argues are indicative of a dead pine tree, the Parish road crews should have noticed and removed the tree long before it fell into the road. We disagree.
|4A trial court’s findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993); Morton v. Hicks, 46,991 (La.App.2d Cir.09/28/11), 74 So.3d 268, writ denied, 2011-2140 (La.09/30/11), 71 So.3d 297. To reverse a fact finder’s *611 determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart, supra. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
 Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Further, when findings are based on determinations regarding credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings. Id. Only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in that which is said. Orea v. Scallan, 32,622 (La.App.2d Cir.01/26/00), 750 So.2d 488.
The state is not the guarantor of the safety of travelers, but owes a duty to keep highways and shoulders reasonably safe for non-negligent motorists. Lewis v. State through Dept. of Transp. and Dev., 94-2370 La.04/21/95), 654 So.2d 311, 314. In order to establish a breach of the state’s duty to maintain safe ty for the motoring public, a plaintiff must show that: 1) a hazardous condition existed; 2) the state had actual knowledge of the condition; and, 3) the state failed to take corrective action within a reasonable time. Id. at 315, citing Briggs v. Hartford Ins. Co., 532 So.2d 1154 (La.1988).
In the present case, the trial court was not manifestly erroneous in finding that the Parish lacked actual or constructive notice of the dead tree, as the record reflects a reasonable factual basis for all of the trial court’s conclusions. The trial court found that the tree, located in a stand of pines and hardwoods, could not have been spotted by a drive-by inspection. Regarding this issue, the trial court heard testimony from two expert witnesses, Tom Bourland and Steve Muslow.
Bourland, Scott’s expert forester, testified that the tree could not have been missed during a drive-by inspection of the road. In describing the signs of a dead or dying pine tree, Bourland testified that one must look for red pine needles at the crown of the tree, a slippage or loss of bark, and the dropping of numerous large limbs. Bourland testified that the red pine needles of a dead tree are like a red flag indicating that a tree is dying and concluded that the Parish could not have missed this sign because the tree stood close to the edge of the road unobstructed by other trees. Bourland based this finding on measurements taken by responding law enforcement personnel, the video from a Sheriffs police car, and photographs from Google Earth.
| f,Steve Muslow testified for the Parish and was also accepted as an expert in forestry. Muslow testified that he would not expect a person to spot the tree during a drive-by inspection, because the tree would not have appeared dead. Based on the substantial amount of bark found on the road after the accident, Muslow determined that the tree still had bark along its base before it fell which falsely indicated that it was still alive. Concerning the needles of the tree, Muslow testified that the red pine needles at the crown of a tree are not always easily identifiable and that even he occasionally misses this sign. Muslow further testified that the difficulty of spotting the red crown of this particular pine tree was likely increased due to the fact that the foliage of the surrounding *612 hardwood trees tended to conceal the tree’s crown.
Concerning the location of the tree, Muslow identified another stump farther off the road and among a stand of trees which he felt matched the dimensions of the fallen tree closer than the stump identified by Bourland. Additionally, Muslow stated that judging from the cruiser video of a responding deputy, the tree’s base appeared farther back in the woods. Based on these observations, Muslow opined that the stump identified by Bour-land was not the stump of the fallen tree.
Faced with two differing expert opinions, the trial court gave well reasoned explanations for its preference toward Muslow’s testimony. Specifically, the trial court noted that Bourland’s testimony indicated that he failed to observe that the “Connells actually live on the property which he said he inspected.” Further, the trial court was concerned with the accuracy |7of the Google Earth photographs which Bourland relied on, because he failed to pinpoint the date on which the photographs were taken. Finally, the trial court noted Bourland’s lack of knowledge concerning how government entities inspect roadways. After weighing and evaluating expert and lay testimony in a bench trial, the trial court may accept or reject the opinion expressed by any expert. Davenport v. Giles, 46,606 (La.App.2d Cir.11/02/11), 80 So.3d 492. The effect and weight to be given to expert testimony depends on the underlying facts and rests within the broad discretion of the trial court. Dickerson v. Coon, 46,423 (La.App.2d Cir.08/10/11), 71 So.3d 1135. The record reflects that the trial court was well within its discretion to evaluate the expert witness testimony before it, and its decision will not be disturbed upon appeal.
Additionally, the trial court also cited the testimony of Caddo Parish Deputies Tondra Schneider and Paul Brown who patrolled Keatchie-Marshall Road, the owner of the land from which the tree fell, and the adjacent landowner in support of its finding that the Parish lacked constructive notice. None of these witnesses noticed a tree posing a hazard to motorists despite driving by the tree on a frequent basis.

Corrective Action

Finally, Scott argues that the Parish failed to notice the dead tree, because the Parish lacked any procedures or policies for establishing when the inspection of a road should occur or how an inspection should be done. Furthermore, he maintains that because Parish road crews were not trained to detect the signs of a dead or dying tree, they did not look for or cut down 18dead trees along the roadways or see the obvious danger presented by the dead tree which caused the accident.
The trial court considered evidence regarding the issue of whether the Parish had taken corrective action within a reasonable time. It found that the Parish had policies in place concerning road inspections and the identification and removal of hazardous trees. This finding is also supported by the record and not manifestly erroneous. The trial court cited the testimony of Larry Martenson, a road foreman with 23 years of experience, who was responsible for maintaining Keatchie-Mar-shall Road at the time the accident took place. Martenson admitted that while there were no written policies concerning when to inspect a specific road, all roads were checked at least monthly and that heavily trafficked roads, such as Keatchie-Marshall Road, were checked more often. Martenson’s testimony concerning road inspections was corroborated by other witnesses with equally considerable knowledge of and experience with the Parish’s policies concerning road inspections. *613 James Hankins, the District Manager for Caddo Parish Public Works responsible for all the road crews patrolling Keatchie-Marshall Road, testified that crews attempt to inspect all the roads within their domain at a minimum, at least once a month.
All Parish employees testified that when a dead tree on private property is identified as a threat, the tree is reported to the Parish attorney and the landowner is identified and asked to remove the tree. If the tree poses an immediate danger, the Parish will cut it down immediately. |3Indeed, Martenson testified that the tree in this case should have and would have been cut down immediately had it been identified.
The trial court also relied on the testimony of Joseph Blaschke, who was tendered as an expert in highway design and traffic engineering. Blaschke had worked with highway departments in Texas, Louisiana, and Mississippi and testified that governmental entities in charge of roadway maintenance do not have defined periods for inspections but schedule their inspections based on the usage of the road. Accordingly, based on the usage of Keat-chie-Marshall Road, Blaschke testified that it was likely inspected more frequently. Blaschke also testified that road crews typically conduct their inspections by driving down the road at the posted speed limit looking for hazardous conditions. Blaschke opined that based on his review of the accident scene, the tree would have been very difficult to spot during a drive-by inspection, because the tree was not isolated and visible but concealed among a group of trees.
While the record reflects varying testimony concerning the frequency of inspections, the trial court was in the best position to judge the credibility of each witness, and there is nothing in the record that warrants this court’s reversal of the trial court’s determinations. Martenson’s testimony, which the trial court relied upon concerning the frequency of inspections, was corroborated by the testimony of expert witness Joe Blaschke in that each road is inspected based on the frequency of use. Our review of the. record indicates that the trial court was not erroneous in concluding that the Parish did have policies, although unwritten, concerning road inspections and 11flremoval of hazardous trees. Although the state has a duty to inspect for hazardous conditions along its roadways, this can be accomplished by vehicular patrols of the roadways and does not require detailed walking inspections. See Lewis, supra at 315. Accordingly, we find that there is more than abundant evidence in the record to support the trial court’s finding that the Parish had sufficiently taken corrective action.
Finally, as to the training of road crew personnel, Martenson recited all the signs and stages of a dying pine tree as accurately as the expert foresters that testified. Furthermore, Hankins testified that most of the employees have between 15 and 20 years of experience on the road crew. The trial court did not err in concluding that while the Parish employees who testified did not have formal educational training in forestry, they all possessed sufficient on-the-job training and experience to competently maintain the Parish roadways.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court in favor of the Parish of Caddo. All costs of this appeal are to be paid by Franklin Scott.
AFFIRMED.