CARAWAY, J.
|, After a bench trial, the trial court denied the plaintiffs claims. The trial court held that the plaintiff failed to prove that he was involved in a multi-vehicle automobile accident. The plaintiff appeals the trial court’s ruling and argues that it was manifestly erroneous. For the following reasons, we affirm.

Facts

On November 3, 2011, Tony Powell filed a petition for damages and personal injury he sustained from an automobile accident. The accident was a “chain-reaction” collision which occurred on November 5, 2010. The first vehicle was a Ford F-150 driven by the defendant, Kevin Craft. The defendant’s truck rear-ended the second truck, a Chevy 6000, driven by Marc Johnston. Johnston’s truck subsequently rear-ended Gloria Albritton, who was driving a red Pontiac Grand Prix. The plaintiff was driving his brother’s tan Cadillac Deville and claims to have been rear-ended in this multi-vehicle car accident. The defendant contested the plaintiffs claim and argues that Powell was not involved in this accident.
The bench trial was held on July 11, 2012. Craft testified that he was driving a West Monroe water department vehicle when his microphone dropped onto the floorboard of his vehicle. He stated that he reached down to pick it up and accidentally hit the accelerator. Craft failed to stop in time and rear-ended Johnston who subsequently rear-ended Albritton. He testified that he did not believe that Albrit-ton rear-ended Powell nor did he notice him until he was about to leave.
12At trial, Albritton testified that she ran into the car in front of her. She could not remember what kind of car she hit although she thought it was a truck. In addition, she thought that the driver was a white man. Powell is a black male who was driving his brother’s car, not a truck.
Two adjusters testified at the trial. Phillip Kubes appraised the damage on Albritton’s vehicle. He testified that she had $950.31 worth of damage to her rear bumper but no damage to the front of her vehicle. Albritton’s Pontiac has a plastic ABS bumper. According to Kubes, this type of material is important because:
Those grilles will pop out from the least bit of damage. They have two plastic clips in the bottom of it not much bigger than a toothpick that will allow those grilles to pop out any time that front bumper flexes and these grilles did not pop out and they were not loose at my inspection.
On November 23, 2010, John Eskew examined and appraised Powell’s vehicle. *300 Eskew identified that the Powell Cadillac “sustained minor damage to the rear bumper.” Eskew noted that there were cracks in the upper surface of the back bumper. He testified that Powell had $567.54 worth of damage to his back bumper, but he could not say with certainty what caused the damage. Both appraisers agreed that the front bumper grille of Albritton’s vehicle would have come off if she had hit Powell. The trial court relied upon Kubes’ conclusion that the small, horizontal cracks in Powell’s bumper were inconsistent with the height of Albritton’s front bumper which was alleged to have caused them.
Powell could not attend the trial. As a result, his deposition was entered into the record. Powell stated that he was rear-ended by a white car |3and pushed into the nearby intersection. Although Albritton drives a red Pontiac Grand Prix, Powell stated that he remembers that a white car hit him, because the white car had a black mark on the tip of its front bumper. He stated that he sat in his car until the police officer arrived. After everyone gave their statements, Powell approached the police officer to give his account of the accident. Aside from this accident, Powell stated that he had been in two other prior accidents and suffered the same neck and back injuries as claimed in this accident. Powell’s chiropractor testified at trial. He treated Powell for two to three months as a result of neck and back injuries that Powell stated stemmed from a car accident.
Officer Vernon Pettingill was the Monroe police officer called to the accident scene. Since he was out of town during the trial, his deposition was taken and introduced after the trial. He stated that he was dispatched to a three-car accident. Craft admitted his fault and stated that he rear-ended Johnston, who hit Albritton. Officer Pettingill moved everyone to the nearby parking lot and began taking statements. Thereafter, he recalled that:
As I was just about finished and ready to leave I was approached by a subject, Mr. Powell ... He said, well, I was in the front and I said let me see your vehicle. So I looked at his vehicle, still had dust across the back. I didn’t see any indication on the back of his vehicle it was even touched so then I looked at the front of V3 to see if she had any indication of any visible damage that I was missing off of V4 on his vehicle. I didn’t see any visible damage to the front of that vehicle.
Officer Pettingill stated that the other accident victims failed to recognize Powell and did not believe that he was involved in the accident.
|/The trial court filed written reasons for judgment, noting inconsistencies in Powell’s and Albritton’s testimonies and the fact that these two witnesses provided the sole link to Powell’s involvement in the accident. Powell’s inconsistent testimony regarding the color and mark on the vehicle that allegedly hit him weighed against him. Additionally, the trial court did not find Albritton’s testimony credible. Based upon these credibility calls, the appraisers’ analyses, and the officer’s testimony, the trial court did not find that Powell carried his burden of proof.
Powell appeals the trial court’s adverse judgment and argues that the trial court was manifestly erroneous.

Discussion

An appellate court may not set aside a jury or trial court’s findings of fact in the absence of manifest error unless such finding is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). When considering whether or not to reverse a trial court’s factual determinations, an appellate court must conduct a two-part test:
*301 1) the appellate court must find from the record that a factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong. Brewer v. J.B. Hunt Transp., Inc., 09-1408 (La.3/16/10), 35 So.3d 230, citing, Stobart v. State Through Dep’t of Transp. & Dev., 617 So.2d 880 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
In this case, the trial court heard testimony regarding varied versions of an accident, and was in the best position to determine the credibility of the witnesses. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands | ¿that great deference be given to the trier-of-fact’s findings, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Scott v. State Farm Fire & Cas. Co., 47,-490 (La.App.2d Cir.9/26/12), 106 So.3d 607; Ratcliff v. Normand, 01-1658 (La.App.3d Cir.6/5/02), 819 So.2d 434. In fact, the court specifically stated in its reasons that it did not find Albritton to be a credible witness, given her shaken demeanor and inconsistent testimony. Aside from Powell’s testimony and the minor damage to his bumper, Albritton was the only other witness who suggested that Powell was involved in the accident.
“While Powell proved that his car was slightly damaged, he failed to prove that it was damaged as a result of the collision at issue. According to the police report, none of the other drivers, including Albrit-ton, noticed or talked to Powell after the accident. Powell was not stopped or located in front of Albritton’s vehicle after the accident. Powell’s presence was first observed by Officer Pettingill in the parking lot nearly an hour after the accident.
Furthermore, Powell’s testimony is inconsistent. Not only did he testify that a white car hit him, he also stated that it had a black mark on its bumper. Albritton’s car was red and her front bumper was intact and unblemished. The appraisers believed that it was nearly impossible for Albritton’s bumper to escape unscathed if contact was made with another vehicle. Officer Pettingill’s field test found dust on the front bumper of | ^Albritton’s car and rear bumper of Powell’s car, indicating a lack of physical contact.
Accordingly, the trial court’s determination that there is insufficient evidence to establish that Powell was involved in this collision is a reasonable assessment and therefore not clearly wrong. We affirm the trial court’s judgment. The plaintiff failed to meet his burden of proof that he was involved in this multi-vehicle car accident. Costs of appeal are assessed to Powell.
AFFIRMED.